UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LORNA ANDERSON, <br>     Plaintiff <br><br> vs. <br><br> MIDLAND FUNDING, LLC <br>     and <br> MIDLAND CREDIT <br> MANAGEMENT, INC. <br>     Defendants | § § § § § § § § § § § | CIVIL ACTION NO.  4:17-cv-00396 <br><br><br><br><br><br> JURY DEMAND |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Lorna Anderson, Plaintiff in the above-numbered and styled case, complaining of and against Midland Funding, LLC and Midland Credit Management, Inc. for cause of action would respectfully state the following:

**I.  INTRODUCTION**

1.  This is an action for damages brought by Plaintiff, Lorna Anderson, consumer, alleging that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. (hereinafter "FDCPA"), the Texas Debt Collection Act, Tex. Fin. Code § 392.001, et. seq. (hereinafter "TDCA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices, the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.40 et. seq. (hereinafter "DTPA"), which prohibits deceptive acts or practices in the conduct of any trade or commerce.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and supplementaljurisdiction for the state law claims is afforded by 28 U.S.C. § 1367. Venue in this District is proper in that the Defendants transact business here and/or the conduct complained of occurred here.

## III. PARTIES

3. Plaintiff, Lorna Anderson is an individual residing in Houston, Harris County, Texas. Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3) and TDCA § 392.001(1).

4. Defendant, Midland Funding, LLC, (hereinafter "Midland") is a foreign corporation engaged in the business of collecting debts in this state with its principal place of business located at 8875 Aero Drive, Suite 200, San Diego, California 92123. Defendant, Midland Funding, LLC may be served with process through its registered agent in the State of Texas, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

5. The principal purpose of Midland Funding, LLC is the collection of debts using the telephone and mail, and Midland regularly attempts to collect debts alleged to be due to another.

6. Midland Funding, LLC is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) and TDCA § 392.001(6).

7. Defendant, Midland Credit Management, Inc., is a foreign corporation engaged in the business of collecting debts in this state with its principal place of business located at 8875 Aero Drive, Suite 200, San Diego, California 92123. Defendant, Midland

Credit Management, Inc. may be served with process through its registered agent in the State of Texas, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

8. The principal purpose of Midland Credit Management, Inc. is the collection of debts using the telephone and mail, and Midland Credit Management, Inc. regularly attempts to collect debts alleged to be due to another.

9. Midland Credit Management, Inc. is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) and TDCA § 392.001(6).

10. Defendant Midland Credit Management, Inc. is a subsidiary of Encore Capital Group (NASDAQ: ECPG). Defendant Midland Funding, LLC and Defendant Midland Credit Management, Inc. are affiliates. (In instances where Midland Credit Management, Inc. and Midland Funding, LLC failed to identify themselves with specificity, each is hereinafter referred to as "Midland.")

## IV. FACTUAL ALLEGATIONS

11. Plaintiff Lorna Anderson opened a consumer credit card for personal use. Subsequently, Plaintiff Lorna Anderson defaulted on her credit card account (hereinafter the "Debt").

12. The Debt was eventually sold, assigned, or otherwise transferred to Midland Funding LLC; and Midland Credit Management Inc. began collecting the debt on behalf of Midland Funding, LLC.

13. In October 2016, Ms. Anderson received a letter dated October 16, 2016 from Midland Credit Management, Inc. attempting to collect the Debt. Specifically,

Defendant Midland Credit Management, Inc. wrote to Ms. Anderson that it was writing on behalf of the "Current Owner", Defendant Midland Funding, LLC.

14.   Midland Credit Management, Inc. wrote, "Congratulations!  You have been **pre-approved** for a discount program designed to save you money."  (Emphasis in original).

15.   The letter offered Ms. Anderson three options highlighting the opportunity for Ms. Anderson to "Choose The Option That Works For You."  (Emphasis in original). Specifically, Defendants were offering Ms. Anderson three various options to pay the alleged $2,719.73 Debt.

16.   On or about November 9, 2016, a collector who goes by the name of "Carl Stark" called Ms. Anderson and identified himself as an employee of "Midland" attempting to collect the Debt.

17.   Ms. Anderson notified Mr. Stark that she does not owe any money to "Midland" on the Debt.  Mr. Stark inquired with Ms. Anderson why she thought she did not owe any money on the Debt.  He went on to say that he sensed there was something that prevented Ms. Anderson from talking about the Debt and asked her if she would tell him what it was that was preventing her from talking about it.

18.   Ms. Anderson simply repeated that she did not owe any money to Midland.

19.   Nevertheless, Mr. Stark insisted that Ms. Anderson owed the Debt to Defendants.  Mr. Stark gave Plaintiff a Midland account number and instructed her to use the last four digits of her social security number as her password to log into the Midland system where she could review the Debt.

20. On or about November 11, 2016, Defendants, by and through their debt collector Carl Stark, called Plaintiff once again.

21. Despite Plaintiff's prior dispute that she owed the Debt, Mr. Stark inquired about the Debt. Plaintiff explained that she was not able to access Midland's website, but that her own records indicated that she did not owe Midland any money.

22. Ms. Anderson asked Defendants whether Midland could send her validation of the Debt. Rather than responding to Plaintiff's request, Defendants once again prodded and pressured Plaintiff to disclose whatever was preventing her from talking about the Debt.

23. Yet again, Ms. Anderson insisted she did not owe the Debt and inquired whether Midland could send validation of the Debt to her.

24. Mr. Stark explained that Midland had sent a collection letter on October 19, 2016, and that it was Midland's policy that they would not send any other mail to Ms. Anderson until the prior letter expired on November 17, 2016.

25. In response to Ms. Anderson's request for an opportunity for validation of the Debt, Mr. Stark explained that Defendants had sent two prior collection letters to Ms. Anderson in 2015 and another collection in February 2016.

26. Ms. Anderson explained that she never received collection letters from Midland prior to October 2016.

27. Unable to resolve Ms. Anderson's inquiries, Mr. Stark transferred the collection call to his supervisor, Neil Carter.

28. Mr. Carter identified himself as Mr. Stark's supervisor.

29. Mr. Carter informed Plaintiff that she had been making payments on the account for nine years with her last payment in February 2015.

30. Mr. Carter pressured Ms. Anderson into telling him what had happened in her life to prompt her to stop paying a bill that he concluded was obviously important to her.

31. Mr. Carter reprimanded Ms. Anderson, telling her that she had been raised to pay her bills.

32. Mr. Carter's patronizing insult surrounding Ms. Anderson's upbringing caused Ms. Anderson to suffer a rush of humiliation and anxiety as she recalled her mother had received a debt collection call from Atlantic Credit & Finance, Inc. that was intended for Ms. Anderson in 2015.[1] Ms. Anderson remembered feeling belittled and scorned by her mother's knowledge of her personal, private financial information. Defendants' mention of Ms. Anderson's upbringing brought back negative feelings of sadness and disappointment vis-à-vis her relationship with her mother.

33. In an attempt to contain her feelings, Ms. Anderson insisted, once again, that her records indicated she did not owe any money on the Debt.

34. Mr. Carter inquired if the Debt was the result of a fraudulent account and whether Plaintiff wanted Defendants to mark the account as fraudulent, thereby setting a fraud alert on her record.

---

[1] In *Lorna Anderson v. Atlantic Credit & Finance, Inc.*, Cause Number 4:16-cv-1601 in the United States District Court for the Southern District of Texas, Houston Division, Plaintiff filed suit alleging debt collection harassment regarding the very same Debt. In the suit against Atlantic Credit & Finance, Inc., Ms. Anderson complained that the debt collector called her mother and disclosed personal financial information causing Ms. Anderson to be confronted by her mother. Ms. Anderson asserted that she was humiliated, ashamed, filled with anxiety, embarrassed, angry and appalled at her mother's knowledge of her personal, financial issues.

35. Plaintiff rejected Defendants' offer to mark the account as fraudulent. Moreover, Plaintiff admitted that she had once opened the account and made charges to it, but also that her records indicate she no longer owed any money on the Debt.

36. Mr. Carter demanded to know Ms. Anderson's plan for paying the Debt once she had logged into Defendants' on-line system and found that the Debt was valid. In other words, Defendants completely disregarded Plaintiff's dispute, leaving Plaintiff in disbelief.

37. Exasperated with the twenty-three-minute collection call, Plaintiff stated she would log into Midland's internet portal that weekend, and she ended the telephone call.

38. Between November 11, 2016 and November 13 2016, Ms. Anderson attempted to log in to the online portal, yet she received error messages that would not allow her to access the purported Debt.

39. On November 14, 2016, Ms. Anderson was called several times by Defendants. She was unable to answer the first calls because of her work schedule. When she was finally available to answer her telephone, the collector identified himself as Neil Carter with "Midland."

40. Ms. Anderson informed Defendants once again that her records indicate she does not owe the debt. Ms. Anderson also pleaded with Mr. Carter that she never received anything from Defendants which would allow the her to formally dispute the debt.

41. Ms. Anderson told Carter that Midland's attempts to collect this debt was causing her stress.

42. Mr. Carter mischaracterized prior calls between stating that Ms. Anderson had previously told Midland not to mark the Debt as a disputed account. In fact, Ms.

Anderson had disputed the account on multiple occasions with Defendants over the telephone, and she had clearly requested a copy of any written communication that would have given her the right to request validation.

43. In November 2016, Ms. Anderson found that Defendant Midland Funding, LLC had reported the Debt as a collection account to all three major credit reporting agencies.

44. Ms. Anderson's Equifax credit report lists Defendant Midland Funding, LLC reported the Debt to Equifax on September 24, 2016 with a past due balance of $2,720.00.

45. Ms. Anderson's Experian credit report lists Defendant Midland Funding, LLC reported the Debt to Experian on October 17, 2016 with a past due balance of $2,720.00.

46. Ms. Anderson's Trans Union credit report lists Defendant Midland Funding, LLC reported the Debt to Trans Union on October 25, 2016 with a past due balance of $2,720.00.

47. In order to preserve her credit worthiness, Plaintiff sent written dispute letters to each of the three major credit bureaus, Equifax, Experian, and Trans Union through United States mail.

48. Defendant Midland Credit Management, Inc. maintains a Consumer Bill of Rights on the website of its parent-company, Encore Capital Group at https://www.encorecapital.com/about/consumer-bill-of-rights-english.

49. According to its Consumer Bill of Rights, Defendant Midland Credit Management, Inc. commits itself to the following guidelines:

**Article 1: Consumer Treatment**
*We Treat Consumers With Dignity and Respect, in a Manner that Promotes Resolution and Seeks to Maximize Consumer Comprehension of their Account Rights and Responsibilities*
-If we make a mistake, we devote time, attention, and effort to resolve it promptly and appropriately. We work hard to learn from our mistakes, and to use what we've learned to improve our consumers' overall experience when interacting with us.
-When interacting with consumers, our employees engage in dialogue that is respectful, honorable and constructive.

**Article 3: Complaints and Disputes**
*We Work Hard to Investigate and Respond to Consumers in a Timely and Accurate Manner*
-When reporting to credit reporting agencies, we provide timely and accurate updates and conduct a reasonable investigation of any disputes based on the information provided. When information is found to be incorrect or outdated, we instruct the agencies to correct or delete the information.
-We provide our consumers with more time than the federal legal requirement to obtain validation of their obligation.

**Article 4: Collection Practices**
*We Commit to Collect from our Consumers in a Fair and Transparent Manner*
-We will only collect on accounts for which we are the legitimate, rightful owner.
-We provide our consumers with a grace period before commencing credit reporting of debt. We continue to refrain from credit reporting with payment activity.
 *How We Communicate*
-At the outset of collection activity, we send a debt validation notice informing the consumer that their account has been purchased, identifying the creditor that held the debt at default, clearly stating the balance owed, and giving the consumer an opportunity to both request further information and resolve the debt.

**Article 5: Privacy and Security**
*We Employ Robust Processes to Protect the Security and Confidentiality of our Consumers' Information*
-We maintain records documenting the collection activities undertaken on our accounts and maintain those records for a reasonable period of time.

50. Plaintiff's life and daily routine were disrupted by Defendants. Ms. Anderson has suffered economic damage, humiliation, anxiety, frustration and emotional distress because of Defendants' debt collection tactics.

## V.  RESPONDEAT SUPERIOR

51. At all times relevant to this matter, Mr. Stark and Mr. Carter were employees or agents of one or both of the Defendants.

52. The acts of Mr. Stark and Mr. Stark fall within the course and scope of their employment with Defendants.

53. At all times relevant, Midland Credit Management, Inc. was the servicer or agent of Midland Funding, LLC.

54. Defendants are each liable for the acts and omissions of their employees and agents under the doctrine of respondeat superior.

55. As a direct and proximate result of the aforementioned actions, Plaintiff has suffered the aforementioned damages.

## VI. CLAIM FOR RELIEF UNDER FAIR DEBT COLLECTION PRACTICES ACT

56. Plaintiff incorporates paragraphs 1-53 above.

57. Defendants violated the FDCPA by making false representations of the character and amount of the purported Debt in violation of 15 U.S.C. § 1692e(2).

58. Defendants violated the FDCPA by communicating to the credit bureaus credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed in violation of 15 U.S.C. § 1692e(8).

59. Defendants violated the FDCPA by engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiffs in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.

60. Defendants violated the FDCPA by disclosing to a third party information related to the collection of the Debt purportedly owed by the Plaintiff in violation of 15 U.S.C. § 1692c(b).

61. Defendants violated the FDCPA by failing to send Plaintiff notice of her right to request validation of the Debt in violation of 15 U.S.C. § 1692g.

62. As a result of these violations of the FDCPA, Defendants is liable to the Plaintiff for a declaratory judgment that Defendants' conduct violated the FDCPA, actual damages, statutory damages, and costs and attorney's fees.

### VII. CLAIM FOR RELIEF UNDER THE TEXAS DEBT COLLECTION ACT AND THE TEXAS DECEPTIVE TRADE PRACTICES ACT

63. Plaintiff incorporates paragraphs 1-53 above.

64. Defendants violated the TDCA by misrepresenting the extent or amount of the purported Debt in violation of Tex. Fin. Code §§ 392.304(a)(8) and 392.304(a)(19).

65. Defendants violated the TDCA by collecting an amount not expressly authorized in violation of Tex. Fin. Code § 392.303(a)(2).

66. Defendants violated the TDCA by berating and harassing Plaintiff in violation of Tex. Fin. Code § 392.302.

67. Defendants violated the TDCA by using coercion in reporting false information the credit bureaus intended to force Plaintiff to make payment on the Debt in violation of Tex. Fin. Code § 392.301(a).

68. Because violations of the TDCA constitute deceptive trade practices under Tex. Fin. Code § 392.404(a), Defendants has also violated the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et. seq.* Furthermore, because the

Defendants acted knowingly and/or intentionally Plaintiffs are entitled to additional damages under the DTPA.

## VIII. JURY DEMAND

69. Plaintiff demands a jury trial.

## IX. PRAYER

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1), Tex. Fin. Code § 392.403(a)(2) and Tex. Bus. & Com. Code § 17.50(b)(1);

B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

C. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3), Tex. Fin. Code § 392.403(b) and Tex. Bus. & Com. Code § 17.50(d) including fees in the event of appeal;

D. Treble damages, pursuant to Tex. Bus. & Com. Code § 17.50(b)(1), and

E. Such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Dana Karni
DANA KARNI
KARNI LAW FIRM, P.C.
State Bar No. 24044379
S.D. Texas Bar No. 592484
4635 Southwest Freeway; Suite 645
Telephone: 713-552-0008
Facsimile:  713-454-7247
Dana@KarniLawFirm.com
ATTORNEY FOR PLAINTIFF